ORIGINAL

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

SEP - 2 2005

Stephan Harris, Clerk
Cheyenne

Karen Budd-Falen
Brandon L. Jensen
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, WY 82003-0346
307/632-5105
Counsel for Plaintiff

Thomas R. French
THOMAS R. FRENCH, P.C.
125 S. Howes St., Suite 401
Fort Collins, CO 80521
(970) 484-0360
Co-counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| HARVEY FRANK ROBBINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05 CV 46 B |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | **PLAINTIFF'S AMENDED** |
| THE INTERIOR; UNITED STATES | ) | **COMPLAINT FOR** |
| BUREAU OF LAND MANAGEMENT, | ) | **DECLARATORY AND** |
| an Agency of the United States Department | ) | **INJUNCTIVE RELIEF** |
| of the Interior | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, by and through his undersigned attorneys, Karen Budd-

Falen, Brandon L. Jensen of Budd-Falen Law Offices, LLC and Thomas R. French with the law

firm of Thomas R. French, P.C., and hereby states his Amended Complaint against the Defendants as follows:

## Nature of Action

1.  This action is brought against the Federal Defendants under the Privacy Act of 1974, 5 U.S.C. § 552a, for actual damages resulting from the unlawful release of agency records to a third party, which they were not required to release without the consent of the Plaintiff. This action is also brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), to hold unlawful, and set aside as arbitrary, capricious, and not in accordance with the law, any release of agency records containing identifying information regarding the Plaintiff.

2.  The Plaintiff seeks an order from this Court declaring the Defendants previous release of agency records to a third party, which they were not required to release without the consent of the Plaintiff, in violation of the Privacy Act, and further seeks an order enjoining the Defendants from unlawfully releasing any agency records subject to the Privacy Act without prior authorization from the Plaintiff, as specifically required by the Privacy Act. Finally, in accordance with 5 U.S.C. § 552a(g)(4), this action also seeks actual damages sustained by the Plaintiff as a direct result of the Federal Defendants failure to comply with the provisions of the Privacy Act.

## Jurisdiction and Venue

3.  This Court has jurisdiction of this matter under the Privacy Act, 5 U.S.C. § 552a(g)(1).

4.     Section 552a(g)(1)(D) provides that whenever any agency "fails to comply with any

provision of this section, or any rule promulgated thereunder, in such a way as to have an

adverse effect on an individual . . . the individual may bring a civil action against the

agency, and the district courts of the United States shall have jurisdiction in the matter

under the provisions of this subsection." See 5 U.S.C. § 552a(g)(1)(D).

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this

action arises under the laws of the United States, including the Privacy Act, 5 U.S.C. §

552a, the Freedom of Information Act, 5 U.S.C. § 552, the Administrative Procedures

Act, 5 U.S.C. §§ 702, 706(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

6.     Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1346(a)(2), since the

Defendant in this action is the United States of America.

7.     Venue is proper in the District of Wyoming based upon 28 U.S.C. §§ 1391(e), 1402(a)(1),

in that the Defendants are either an agency of the United States or employees of such

agency acting under color of legal authority within the boundaries of the District of

Wyoming; Defendants Bennett and Hill reside within the State of Wyoming; and the

Plaintiff resides within the State of Wyoming.

8.     Exhaustion of administrative remedies is not required for Privacy Act suits seeking

damages under 5 U.S.C. § 552a(g)(4).  See Nagel v. United States Department of Health,

Education and Welfare, 725 F.2d 1438, 1441 (D.C.Cir. 1984).  Nevertheless, the Plaintiff

has exhausted all administrative remedies for all violations of the Freedom of Information Act, 5 U.S.C. § 552, alleged herein.

9.    An actual, justiciable controversy now exists between the parties hereto, regarding the subject matter hereof, as to all matters for which the Plaintiffs seek declaratory and injunctive relief; therefore, this Court may declare the rights and other legal relations of the parties in this action under 28 U.S.C. §§ 2201 and 2202.

### Parties

10.    The Plaintiff herein, Harvey Frank Robbins of the High Island Ranch and Cattle Company, a/k/a High Island Ranch, is a resident of Hamilton Dome, Wyoming.  Harvey Frank Robbins is the owner of the High Island, HD, and Owl Creek Ranches.  Harvey Frank Robbins and the High Island, HD and Owl Creek Ranches are the principal subjects of the records unlawfully released by the Federal Defendants.

11.    The Defendant, Department of the Interior ("DOI"), is an executive department of the United States government, and has possession of and control over any information that would be an agency record, subject to the requirements of the Privacy Act and the Freedom of Information Act, which were unlawfully released as set forth herein.

12.    The Defendant, Bureau of Land Management ("BLM"), is an agency of the United States Department of the Interior, and has possession of and control over any information that would be an agency record, subject to the requirements of the Privacy Act and the Freedom of Information Act, which were unlawfully released as set forth herein.  Upon

Plaintiff's information and belief employees of the BLM willfully and unlawfully released the documents specifically described below.

### Factual Allegations Common to All Claims for Relief I – VIII

13.   The particular facts that give rise to this lawsuit began in August, 1998, when Mr. Robbins filed a Complaint against the BLM and the individual employees of the BLM's Worland Field Office in the Wyoming Federal District Court. See Robbins v. Bureau of Land Management, Case No. 98-CV-201B (D. Wyo. August 12, 1998). That case evolved over the years, beginning as a suit for malicious prosecution and eventually coalescing into a suit alleging violations of the Racketeer Influenced Corrupt Organization Act ("RICO") and certain allegations arising under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

14.   During the course of the litigation, the BLM and Mr. Robbins were able to settle several of the underlying issues in dispute. The parties eventually entered into a "global settlement agreement," dismissing or staying several of the underlying administrative determinations and establishing a framework for future communication between the parties.

15.   Throughout the course of litigation, counsel for Mr. Robbins submitted several requests for public records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The documents that form the basis of Claims for Relief I – VIII were either withheld in their entirety or released to Mr. Robbins with significant redactions.

16.    Mr. Robbins subsequently sought review of the BLM's failure to release the requested

documents under FOIA, and further challenged the basis for the claimed exemptions, in a

separate lawsuit filed by Mr. Robbins in the Wyoming Federal District Court. See

Robbins v. Bureau of Land Management, Case No. 03-CV-230-D (D. Wyo. November

12, 2003).

17.    As a result of the FOIA lawsuit, set forth in paragraph 20, the Federal Defendants created

a "*Vaughn Index*" summarizing the requested FOIA documents which were withheld

under various claimed exemptions. See Vaughn v. Rosen, 523 F.2d 1136, 1146 (D.C.

Cir. 1975). "The purpose of a *Vaughn Index* is to permit adequate adversary testing of the

agency's claimed right to an exemption." See Kimberlin v. Department of Justice, 139

F.3d 944, 950 (D.C. Cir. 1998).

18.    The *Vaughn Index* provided to the Plaintiff listed 132 documents either partially redacted

or withheld in their entirety, citing various FOIA exemptions under 5 U.S.C. §

552(b)(1)–(9) as a basis for withholding the documents.

19.    Between February, 2003 and February, 2004, two environmental organization filed

several FOIA requests related to Mr. Robbins' use and management of the Federal public

lands for livestock grazing. Specifically, Western Watersheds Project ("WWP")

submitted five FOIA requests with the Federal Defendants on the following dates:

February 3, 2003, July 8, 2003, July 9, 2003, February 4, 2004, and February 11, 2004. In

addition, Advocates for the West submitted four FOIA requests, each dated May 12, 2003.

20.   Importantly, WWP subsequently filed a lawsuit against the BLM on October 10, 2003 in the Federal District Court for the District of Columbia, challenging various aspects of the "global settlement agreement," referred to in paragraph 14, under the Federal Land Policy and Management Act ("FLPMA") and the APA. See Western Watersheds Project v. Clarke, Case No. 1:03-CV-01985 (D.D.C. October 10, 2003). WWP's Complaint was subsequently amended to include a cause of action alleging that the BLM failed to release records about Mr. Robbins to the WWP and Advocates for the West in violation of the provisions of FOIA.

21.   On November 23, 2003, Mr. Robbins was granted intervention in the WWP lawsuit before the District of Columbia. Mr. Robbins subsequently filed a motion to transfer venue to the Wyoming Federal District Court on January 16, 2004.

22.   In WWP's Response in Opposition to Mr. Robbins' Motion to Transfer Venue, filed on or about February 25, 2004, WWP included the Declaration of Lauren M. Rule. Ms. Rule submitted the four FOIA requests referred to in paragraph 23 on behalf of the Advocates for the West and is an attorney of record in the District of Columbia lawsuit. In her Declaration, Ms. Rule states that "[i]n the course of investigating this case, I have reviewed documents obtained from the BLM." Attached to Ms. Rule's declaration were eighteen documents relating to the Plaintiff's use and management of the Federal public

7

lands for livestock grazing, as well as various issues related to the "global settlement agreement."

23. Of the eighteen documents obtained by WWP through the BLM, access to eight of these documents was initially denied to Mr. Robbins by the BLM pursuant to Mr. Robbins' FOIA requests. For each of the eight documents which were withheld from Mr. Robbins, the BLM cited either: (1) FOIA exemption five, 5 U.S.C. § 552(b)(5), based on the deliberative-process privilege or the attorney-client privilege; or (2) FOIA exemption seven, 5 U.S.C. § 552(b)(7)(A), based on potential interference with future law enforcement actions.

24. Receipt of Ms. Rule's Declaration, filed on or about February 25, 2004, provided to the Plaintiff his first indication that the Federal Defendants, by releasing documents in full to the WWP and Advocates for the West, even though said documents were previously withheld from Mr. Robbins, were in violation of the provisions of the Privacy Act of 1974.

25. Counsel for the Plaintiff subsequently filed an administrative appeal on April 1, 2004, challenging the disparate releases under the two FOIA requests, and seeking a full accounting of all documents that had been withheld to Plaintiff pursuant to the *Vaughn Index* in comparison to those documents released to either WWP or Advocates for the West pursuant to their respective FOIA requests. See FOIA Appeal Number WY-2004-147. Although several of these documents were eventually released to Mr. Robbins after

8

Mr. Robbins appealed the *Vaughn Index* withholdings, Mr. Robbins has ultimately documented several instances whereby the BLM either withheld documents from Mr. Robbins in their entirety, or released these documents with substantial redactions, while almost simultaneously releasing these same documents in their entirety to either WWP or Advocates for the West.

26.   As stated in paragraph 24 above, WWP thereafter amended its Complaint in Western Watersheds Project v. Clarke, Case No. 1:03-CV-01985 (D.D.C. October 10, 2003), to add a cause of action against the BLM for failure to process several FOIA requests in a timely manner.  WWP sought to expedite the release of over 3,000 pages of agency records related to Mr. Robbins' use and management of the Federal public lands for livestock grazing, several of which were contained in a folder marked "privileged" and/or "confidential."

27.   WWP then filed a Motion for Partial Summary Judgment in Western Watersheds Project v. Clarke, Case No. 1:03-CV-01985 (D.D.C. October 10, 2003), pertaining to their FOIA allegations.  Having been made aware that WWP and Advocates for the West were receiving privileged information otherwise subject to various FOIA exemptions, summarized in paragraph 27 above, and concerned that WWP's Motion for Partial Summary Judgment would result in additional unlawful releases of information, Mr. Robbins filed a Response in Opposition to WWP's motion.

9

28.   The parties thereafter arrived at a stipulated agreement to dismiss WWP's Motion for
      Partial Summary Judgment.  In the stipulated agreement, the BLM agreed to the
      following terms: (1) On or before August 24, 2004, the BLM would provide Mr. Robbins
      with a copy of the documents and *Vaughn Index* which were sent to Ms. Rule on August
      4, 2004, in response to the FOIA requests set forth in a June 17, 2003 letter sent by
      Advocates for the West to the Washington, D.C. headquarters of the BLM, and a June 17,
      2003 letter sent by Advocates for the West to the Wyoming State Office of BLM; and (2)
      On or before September 30, 2004, the BLM would provide both Mr. Robbins and
      Advocates for the West with the remaining releasable documents and a *Vaughn Index* in
      response to the third FOIA request at issue, a May 12, 2003 letter sent by Advocates for
      the West to the Worland District Office of the BLM.

29.   On or about August 19, 2004, the Plaintiff received the documents previously sent to Ms.
      Rule on August 4, 2004 in accordance with the stipulated agreement.  In reviewing the
      *Vaughn Index* provided to Ms. Rule in conjunction with this latest release of information,
      the Plaintiff uncovered additional evidence that the BLM has improperly released
      documents in violation of the Plaintiff's rights under the Privacy Act.  This additional
      evidence relates to documents acquired relating to Claim for Relief XII.

30.   Neither Mr. Robbins, nor his legal counsel, Ms. Karen Budd-Falen, provided
      authorization to release any of these privileged documents to either WWP or Advocates
      for the West.  In fact, the BLM never even attempted to contact either Ms. Budd-Falen or

Mr. Robbins prior to releasing the documents to WWP.  Accordingly, the BLM's actions

in voluntarily making public any record which they are not required to release without

first obtaining the consent of either Ms. Budd-Falen or Mr. Robbins, constitutes separate

violations of the Privacy Act.

**Factual Allegations Common to All Claims for Relief IX – XI**

31.   In reference to the documents released pursuant to the stipulated agreement referred to in

paragraphs 32–33 of this Complaint, the Plaintiff has noted that the FOIA indexes

prepared by the BLM in <u>Western Watersheds Project v. Clarke</u>, Case No. 1:03-CV-01985

(D.D.C. October 10, 2003) contain internal inconsistencies that give rise to three

additional causes of action under the Privacy Act.

32.   In WY Index # 2, there is an internal inconsistency regarding document numbers three

and ten.  The index lists the disposition for these two documents as a full release, not

otherwise subject to any FOIA exemptions.  However, immediately following the

disposition status of these two documents is a caveat that each of these documents is

protected from disclosure under FOIA exemption five's deliberative process privilege, or

protected from disclosure under FOIA exemption seven, as information used in possible

future law enforcement actions.

33.   In WY Index # 3, there is an internal inconsistency regarding document number 38.  The

index lists the disposition of this document as a full release, not otherwise subject to any

FOIA exemptions.  However, immediately following the disposition status of this

11

document is a caveat that the document is protected from disclosure under FOIA exemption five's deliberative process privilege.

34.    Neither Ms. Budd-Falen nor Mr. Robbins ever gave authorization to release any of these privileged documents to either WWP or Advocates for the West.  In fact, the BLM never even attempted to contact either Ms. Budd-Falen or Mr. Robbins prior to releasing the documents to WWP.  Accordingly, the BLM's actions in voluntarily making public these three records which they were not required to release without first obtaining the consent of either Ms. Budd-Falen or Mr. Robbins, constitutes three additional violations of the Privacy Act.

### Factual Allegations Common to All Claims for Relief XII – XV

35.    Of the eighteen documents that were attached as exhibits to WWP's Response in Opposition to the Motion to Transfer Venue, filed on or about February 25, 2004, six documents were letters written by Ms. Karen Budd-Falen, counsel for Mr. Robbins, to Fran Cherry, Deputy Director of the BLM, with copies distributed to Robert Comer and John Kunz, DOI attorneys within the Solicitor's Office.

36.    Four of these documents prepared by Ms. Budd-Falen contained the express statement that the information given was "protected by the attorney/client privilege and is confidential information intended only for the use of the individual or entity named above . . . [and] . . . any unauthorized dissemination, distribution or copy of this communication is strictly prohibited."  The intended recipients listed on these documents include only

BLM employees or DOI officials. These documents were submitted as part of the negotiations for the "global administrative settlement" agreement between the DOI and Mr. Robbins referenced in paragraph 18 above. Outside environmental groups were not the intended recipients of any of these documents provided by Ms. Budd-Falen to the BLM.

37.     Neither Ms. Budd-Falen nor Mr. Robbins ever gave authorization to release any of these four documents to WWP or Advocates for the West. In fact, the BLM never attempted to contact either Ms. Budd-Falen or Mr. Robbins prior to releasing the documents to WWP. Accordingly, the BLM's actions in voluntarily making public these four records which they were not required to release without first obtaining the consent of either Ms. Budd-Falen or Mr. Robbins, constitutes four additional violations of the Privacy Act.

### Factual Allegations Common to Claim for Relief XVI

38.     Among the documents released to either WWP or Advocates for the West pursuant to the several FOIA requests and summarized on the FOIA indexes provided to WWP and Advocates for the West, is a confidential memorandum prepared by an attorney for Budd-Falen Law Offices. This document is listed on FOIA Washington Index, number 62.

39.     The memorandum contains the legal advice and opinions of Plaintiff's counsel, and contains information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The memorandum also contains the express statement that the information contained in the memorandum is considered "confidential."

13

40.     This memorandum was sent via facsimile to Robert Comer, counsel for the BLM with the

        Solicitor's Office.  The intended recipient included only Robert Comer.  Nothing

        contained in the memorandum authorizes dissemination to other BLM employees or

        otherwise negates the privileged nature of the document.  Outside environmental groups

        were not the intended recipients of any of these documents provided by Ms. Budd-Falen

        to Robert Comer, counsel for the BLM with the Solicitor's Office.

41.     Neither Ms. Budd-Falen nor Mr. Robbins ever gave authorization to release this

        confidential memorandum containing the Plaintiff's litigation strategy in the related

        Wyoming lawsuit to either WWP or Advocates for the West.  In fact, the BLM never

        attempted to contact either Ms. Budd-Falen or Mr. Robbins prior to releasing the

        document to Ms. Rule.  Accordingly, the BLM's actions in voluntarily making public this

        record which they were not required to release without first obtaining the consent of

        either Ms. Budd-Falen or Mr. Robbins, constitutes an additional violation of the Privacy

        Act.

### Factual Allegations Common to Claim for Relief XVII

42.     On July 1, 2003, counsel for the Plaintiff submitted a FOIA request to the Worland Field

        Office requesting any records related to a June 22, 2003 newspaper article written about

        the Plaintiff in the Casper Star Tribune.  Plaintiff asked for copies of all records upon

        which the information in the news article was based.

14

43.   On August 22, 2003, the Worland Field Office responded to the FOIA request.  The

return letter stated that all the records that were provided to the Casper Star Tribune were

deemed public records.

44.   The news article contained the following statement, "[a]ccording to Dave Wallace,

supervisory range conservationist, Worland has sent about a dozen issues to Cheyenne.

Some issues have expired, others have been worked through, but still others are

unresolved."  Plaintiff specifically asked for all records upon which this statement was

based.

45.   According to the August 22nd FOIA response from the BLM, Mr. Wallace's quote was

based on information contained in a document which included a chronological listing of

topics sent by the Worland Field Office to the Wyoming State Office.  Although the

document was not given to the Casper Star Tribune, the quote was apparently based on

his recollections of the content of the document.

46.   In response to Plaintiff's FOIA request, on or about August 22, 2003, the Defendants

provided a copy of the above referenced document.  This document contained substantial

redactions, pursuant to FOIA exemptions 5, 6, 7(a), 7( c), and 7(d).

47.   Counsel for the Plaintiff then contacted the Casper Star Tribune, requesting copies of all

documents in its possession that were used to substantiate the news article.

48.   On or about August 28, 2003, the Casper Star Tribune subsequently provided counsel for

the Plaintiff with two pertinent documents.  The first was a letter from the Public

15

Employees for Environmental Responsibility ("PEER") to the Inspector General's Office. PEER lodged a complaint against the Defendants regarding several issues resolved by the "global settlement agreement" between Robbins and the BLM. Attached to this letter was the same chronological listing of events which Plaintiff had previously sought access to through the FOIA request.

49.    However, the chronological listing of events was released to PEER in its entirety, with no redactions, in stark contrast to what was provided to Mr. Robbins described in paragraph 46 above.

### The Privacy Act

50.    "The Privacy Act protects the privacy interests of individuals in information collected about them by federal agencies."  See Nagel v. United States Department of Health, Education, and Welfare, 725 F.2d 1438, 1440 (D.C. Cir. 1984).  The Privacy Act guards these privacy interests by "prescrib[ing] certain duties for the agencies which collect, store, and disseminate such information."  See id.

51.    The Privacy Act of 1974, 5 U.S.C. § 552a, provides, in part, that:

   (b)    No agency shall disclose any record which is contained in a system of records by any means or communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be --

          * * * * *

   (2)    required under section 552 [FOIA] of this title.

16

52.     Accordingly, given the use of the term "required," agencies may not voluntarily make

public any record which they are not required to release (*i.e.*, those that they are permitted

to withhold pursuant to the exemptions under FOIA, 5 U.S.C. § 552(b)) without the

consent of the individual unless that disclosure is permitted under one of the other

provisions of the Privacy Act. See Office of Management and Budget, Privacy Act

Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28948, 28954 (July 9,

1975).

53.     Stated another way, if a FOIA exemption applies to a record protected under the Privacy

Act, the Privacy Act prohibits an agency from making a "discretionary" FOIA release,

because that disclosure would not be "required" by the FOIA within the meaning of

subsection (b)(2).  See United States Department of Defense, Department of Military

Affairs v. Federal Labor Relations Authority, 964 F.2d 26, 30 n.6 (D.C. Cir. 1992), citing

Chrysler Corp. v. Brown, 441 U.S. 281, 293 (1979) (holding that the FOIA exemptions

*permit* an agency to withhold information, but do not *compel* it to do so); see also United

States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S.

749, 762-75 (1989).

54.     Therefore, an agency may permit a non-consensual disclosure only if the disclosure

would be "required" under FOIA.

55.     An agency's release of information in violation of the Privacy Act is, therefore, not in accordance with the law should be set aside pursuant to section 10(e) of the APA.  See Doe v. Stephens, 851 F.2d 1457, 1466 (D.C. Cir. 1988); see also 5 U.S.C. § 706(2)(A).

56.     The Privacy Act defines a "record" to include:

[A]ny item, collection or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name or the identifying particular assigned to the individual such as a finger or voice print or photograph.

5 U.S.C. §552a(a)(4).

57.     The "statutory definition of a record as 'any item, collection, or grouping of information about an individual' appears . . . to have a broad meaning encompassing any information about an individual that is linked to that individual through an identifying particular." See Quinn v. Stone, 978 F.2d 126, 131 (3rd Cir. 1992).

58.     The guidelines promulgated by the Office of Management and Budget ("OMB"), as required by the Privacy Act, 5 U.S.C. § 552a(v), define a "record" to mean "any item of information about an individual that includes an individual identifier." See Office of Management and Budget, Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28948, 28951 (July 9, 1975).  The phrase "individual identifier" suggests "any element of data (i.e., name or number) or other descriptor (i.e., fingerprint, voice print, or photographs) which can be used to identify an individual." See id. at 28952.

59. The guidelines promulgated by the Office of Management and Budget ("OMB"), as required by the Privacy Act, 5 U.S.C. § 552a(v), are afforded a presumption of deference. See Henke v. United States Department of Commerce, 83 F.3d 1453, 1461 n.12 (D.C. Cir. 1996).

60. The documents at issue in this case are maintained by the BLM in a system of records and contain personal identifying information about the Plaintiff, such as his name. Some of these documents also disclose information about the Plaintiff's financial transactions. Therefore, the documents in question are "records which are contained in a system of records" within the meaning of the Privacy Act, 5 U.S.C. § 552a(b).

61. Under the Privacy Act, non-consensual disclosure of protected information is prohibited unless such disclosure is "required" by the provisions of FOIA, 5 U.S.C. § 552. See 5 U.S.C. § 552a(b)(2); see also 43 C.F.R. § 2.52(b). The term "disclosure" is not defined in the Privacy Act. However, various courts have taken a broad view of the term, "interpret[ing] 'disclose' in a manner that will give effect to Congress' interest to protect the individual privacy of the subjects of protected records, except as to those disclosures authorized by the Act." See Pilon v. United States Department of Justice, 73 F.3d 1111, 1119 (D.C. Cir.1996) (adopting the broader view that "disclose" means the dissemination or transmission of information, rather than adopting the narrower view that "disclose" means the making known of information previously kept secret). The BLM has both

19

disseminated, and made known to third parties, information pertaining to the Plaintiff which is protected within the meaning of the Act.

62.   Courts have also stated that an agency may not release Privacy Act material unless the agency has a FOIA request in hand and is required by the FOIA – not just permitted – to release the record. "Only when an agency is faced with a FOIA request for information that is not within a FOIA exemption, and therefore has no discretion but to disclose the information, does the FOIA exception to the Privacy Act come into play." See Bartel v. Federal Aviation Administration, 725 F.2d 1403, 1412 (D.C. Cir.1984); see also Plain Dealer Publishing Co. v. United States Department of Labor, 471 F.Supp. 1023, 1030 (D.D.C. 1990) (stating that the "net effect of [§ 552a(b)(2)] is to permit disclosure where the FOIA requires it, but to prohibit disclosure where the FOIA allows the agency to refuse to disclose.").

63.    The agency records at issue herein cannot be released without the prior written authorization of the Plaintiff, unless such release is "required" by the provisions of FOIA. See 5 U.S.C. § 552a(b)(2); see also 43 C.F.R. § 2.52(b).  However, since the release of the disputed materials was not "required" by FOIA, the BLM's failure to obtain the Plaintiff's written authorization before releasing the information to third parties, constitutes a violation of the Privacy Act.

64.     Under the Privacy Act, the Plaintiff must demonstrate that the agency's failure to comply with the provisions of the Act resulted in an "adverse effect" to Plaintiff's interests. See 5 U.S.C. § 552a(g)(1)(D).

65.     Courts have determined that the element of "adverse effect" can be broken down into two parts. See Quinn v. Stone, 978 F.2d 126, 131 (3rd Cir. 1992). First, the court must assess whether the plaintiff has been adversely affected by an agency's actions. See id. at 135. Second, the court must determine if there is a causal connection between the adverse effect and the agency's actions. See id., citing Hewitt v. Grabicki, 794 F.2d 1374, 1379 (9th Cir. 1986).

66.     An allegation that the Plaintiff suffered a personal invasion is sufficient to confer standing under the Act. See Parks v. Internal Revenue Service, 618 F.2d 677, 683 (10th Cir. 1980); see also Quinn v. Stone, 978 F.2d 126, 135–36 (3rd Cir. 1992) (finding that stress, emotional anguish, and occupational losses sufficiently constitute an adverse effect under the Privacy Act); and Rice v. United States, 211 F.R.D. 10, 13 (D.D.C. 2002) (finding that adverse effect may include emotional distress; proof of pecuniary, economic, or special damages was not required under the Privacy Act to show adverse effect).

67.     The Plaintiff herein was the subject of the unlawful disclosures by the Federal Defendants.  As a result of these unlawful disclosures, the Plaintiff suffered an unwarranted invasion of personal privacy.  This unwarranted invasion of personal privacy was directly caused by the actions of the Defendants and resulted in harm to the Plaintiff.

68.  If an agency violates the Privacy Act and unlawfully discloses protected information, the

individual harmed by the disclosure may be entitled to collect actual damages from the

offending agency.  Specifically, the Privacy Act provides that:

> In any suit brought under the provisions of subsection (g)(1)© or (D) of this
> section in which the court determines that the agency acted in a manner which was
> intentional or willful, the United States shall be liable to the individual in an
> amount equal to the sum of —
>
> (A)  actual damages sustained by the individual as a result of the refusal
>       or failure, but in no case shall a person be entitled to recovery
>       receive less than the sum of $1,000; and
>
> (B)  the costs of the action together with reasonable attorney fees as
>       determined by the court.

See 5 U.S.C. § 552a(g)(4).

69.  The Plaintiff was financially harmed by the unlawful disclosures by the BLM, and hence,

suffered actual damages as a result of the failure of the BLM to comply with the

provisions of the Privacy Act.  The privileged information received by WWP, without the

Plaintiff's consent as required by the Privacy Act, has been used against the Plaintiff in

related ongoing litigation in the District of Columbia.  As a result, the Plaintiff has

incurred substantial legal expenses to defend against these allegations.

70.  For example, the Western Watersheds Project, based upon the released documents, have

termed Robbins, a  "renegade Wyoming public lands rancher," with a "sweet deal cut

with the Department of Interior officials", a scofflaw rancher and a hobby rancher.

These, and other derogatory terms, have been quoted by the general press and have

caused both Robbins and his family stress and emotional anguish. Additionally, these statements have caused occupational losses.

71.     In order to recover damages, the agency's action must also be "intentional or willful." See 5 U.S.C. § 552a(g)(4). "Intentional and willful" conduct under the Privacy Act is "somewhat greater than gross negligence," see Hill v. United States Air Force, 795 F.2d 1067, 1070 (D.C. Cir.1986), or an act committed "without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." See Albright v. United States, 732 F.2d 181, 189 (D.C. Cir.1984).

72.     Regulations promulgated by the Department of the Interior specifically demand consideration of the Privacy Act when members of the public seek to obtain copies of DOI records through FOIA or by other means. See 43 C.F.R. § 2.27(a); see also 43 C.F.R. Subtitle A, Part 2, Subpart G (regulations of the DOI implementing the provisions of the Privacy Act). It is the policy of the Department of the Interior "to make records of the Department available to the public consistent with the spirit of the FOIA and the Privacy Act." See 43 C.F.R. § 2.2. When a third party requests information about an individual which is subject to the Privacy Act, the material will not be disclosed without prior written approval by that individual unless the release is provided for under one of the Privacy Act conditions of disclosure, 5 U.S.C. 552a(b), "one of which is that Privacy Act information is releasable if it is required to be released under the FOIA." See 43 C.F.R. § 2.27( c)(1).

23

73.   None of the conditions for disclosure were present when the Defendants released agency records to third parties without first obtaining the consent of the Plaintiff.  There is no indication that the Plaintiff's privacy interests were ever considered by the BLM when it released the privileged documents to WWP.  Failure to consider the privacy interests of the Plaintiff constitutes a flagrant disregard of the Plaintiff's rights and Defendants' responsibilities under the Privacy Act, particularly in light of the fact that DOI regulations demand such consideration.

74.   The BLM acted intentionally and wilfully within the meaning of the Privacy Act when the agency released documents to third parties without the Plaintiff's consent.  Based on both the dictates of FOIA and internal agency guidelines, the agency was required to determine if the requested information was of a confidential or protected nature.  See 43 C.F.R. §§ 2.51 (assuring integrity of records), 2.52 (conduct of employees), and 2.56 (disclosure of records).  The egregious nature of the conduct of the BLM is only magnified in light of the fact that the Plaintiff attempted to obtain the very same records through FOIA, yet was denied access in every instance.

### Administrative Procedure Act

75.   Section 10(a) of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."  See 5 U.S.C. § 706(2).  Section 10(e), in turn, provides that a reviewing court shall "hold unlawful and set aside agency action, findings and

24

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

76. The disclosure of privileged documents in violation of the Privacy Act is not in accordance with law within the meaning of the APA. Plaintiff's claims for equitable relief under the Privacy Act for either a declaration or injunctive order are therefore authorized under section 706 of the APA. See Doe v. Chao, 540 U.S. 614, 619 n.1 (2004); see also Doe v. Stephens, 851 F.2d 1457, 1466 (D.C. Cir.1988), citing 5 U.S.C. § 706(2).

77. Moreover, the BLM acted arbitrarily, capriciously, and not in accordance with the law, by failing to maintain records with appropriate administrative safeguards to insure their confidentiality, see 43 C.F.R. § 2.51(a); to protect against any hazards to the integrity of confidential records which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom the information is maintained, see 43 C.F.R. § 2.51(a), citing 5 U.S.C. § 552a(e)(10); and by failing to assure that the records maintained by the BLM are maintained with confidentiality meeting the requirements of the Privacy Act, see 43 C.F.R. § 2.51(e)(1).

78. The conduct of the BLM in disclosing confidential information to third parties regarding the Plaintiff, while simultaneously denying access to the very same records to the Plaintiff himself, clearly evidences a failure to protect the integrity, security and confidentiality of the records at issue. See 43 C.F.R. § 2.52(a). Even assuming that the alleged violations

25

of the Privacy Act are the fault of one or more rogue Federal employees, acting without proper authority, the BLM is ultimately responsible for assuring that its employees are made aware of the requirements of the Privacy Act. See 43 C.F.R. § 2.52(d).

79.    Additionally, the courts have held that the arbitrary and capricious standard of review requires agencies to avoid "unexplained discrimination." See Puerto Rico Sun Oil v. United States Environmental Protection Agency, 8 F.3d 73, 77 (1st Cir. 1993). Clearly, the conduct of the BLM in disclosing confidential information to third parties regarding the Plaintiff, while simultaneously denying access to the very same records to the Plaintiff himself, constitutes "unexplained discrimination."

**CLAIM FOR RELIEF I:**
*Wallace Email*

80.    The allegations set forth in paragraphs 1 through 79 above are incorporated by reference as if set forth fully below.

81.    On February 25, 2003, David Wallace sent an email to Francis Cherry, Assistant Director for the BLM Washington Office; Bob Bennett, State Director for the BLM Wyoming Office; Timothy Reuwsaat, Group Manager for the BLM Washington Office; and Alan Kesterke, Associate State Director for the BLM Wyoming Office.

82.    The email contains several allegations of improper use and management of the Federal public lands for livestock grazing by the Plaintiff. The email identifies the Plaintiff by personal name and allotment name.

26

83.    This document was eventually provided to the Plaintiff in partially redacted form

pursuant to the *Vaughn Index* appeal, based on FOIA exemption 5, claiming a

deliberative process privilege and an attorney-client privilege.  This document was also

withheld under FOIA exemption 7(a), which prohibits disclosure on the basis that the

production of such records could interfere with future enforcement proceedings.  This

document is found in the *Vaughn Index*, number 41.

84.     WWP subsequently stated in the related District of Columbia lawsuit that WWP

obtained this same document from the BLM.  The email was released to WWP in its

entirety.  Mr. Robbins obtained a copy of the unredacted document from the BLM

pursuant to the terms of the stipulated agreement in <u>Western Watersheds Project v.</u>

<u>Clarke</u>, Case No. 1:03-CV-01985 (D.D.C. October 10, 2003).  This document is found in

the FOIA Washington Index, number 27.

85.    In other words, the BLM eventually released a partially redacted version of this document

to the Plaintiff *only after* the Plaintiff pursued the matter on administrative appeal, while

simultaneously releasing the same document in its entirety to third parties actively

seeking to undermine Mr. Robbins' interests in both the "global settlement agreement"

and in the related lawsuit currently pending in the D.C. District Court.

86.    This document is a "record" found in a "system of records" within the meaning of the

Privacy Act.  The document contains personal information which identifies the Plaintiff.

The document was subject to a FOIA exemption, and therefore constitutes a protected

27

record under the Privacy Act. However, the record was "disclosed" to third parties without the prior authorization of the Plaintiff.

87. Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

88. As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

89. The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff. Releasing a document subject to a deliberative process and attorney-client exemption under FOIA, and also subject to a law enforcement exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act. Stated another way, the agency could have no reasonable grounds for redacting privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act. Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

**CLAIM FOR RELIEF II**:
*Rigg Drought Letter*

90.   The allegations set forth in paragraphs 1 through 89 above are incorporated by reference as if set forth fully below.

91.   On July 3, 2002, Jennifer E. Rigg, BLM counsel with the Solicitor's Office, drafted a letter to Karen Budd-Falen, counsel for Mr. Robbins, regarding a drought decision made by the BLM on October 19, 2001.

92.   The letter contains handwritten notes, and is in draft form. The letter identifies the Plaintiff by personal name and allotment name.

93.   This document was withheld from the Plaintiff in its entirety, based on FOIA exemption five, claiming a deliberative process privilege, attorney work product privilege, and an attorney-client privilege. This document is found in the *Vaughn Index*, number 74. This document was also subsequently withheld from the Plaintiff in its entirety even after administratively appealing the *Vaughn Index* withholdings.

94.   WWP subsequently stated in the related District of Columbia lawsuit that WWP obtained this same document from the BLM. The letter was released to WWP in its entirety. This document is found in the FOIA WY Index #1, number 18.

95.   This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff. The document was subject to a FOIA exemption, and therefore, protected information

under the Privacy Act. The record was "disclosed" to third parties without the prior authorization of the Plaintiff.

96.    Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

97.    As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

98.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff. Releasing a document subject to a deliberative process and attorney-client exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act. Stated another way, the agency could have no reasonable grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act. Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM FOR RELIEF III:
### *Bankert Memorandum*

99.   The allegations set forth in paragraphs 1 through 98 above are incorporated by reference as if set forth fully below.

100.  In a memorandum dated February 4, 2003, from the Acting Assistant Field Manager, Roger Bankert, to the Worland Field Manager, the author records his recollections of a January 9, 2003 meeting that included BLM managers and an attorney from the Solicitors' Office.

101.  The memorandum contains the mental impressions of the material discussed, which include various issues surrounding the implementation of the "global settlement agreement." The document discusses strategy and alternatives with respect to these issues, and contains legal advice from the Solicitors' Office. The document identifies the Plaintiff by personal name, ranch name and allotment name.

102.  This document was initially withheld from the Plaintiff in its entirety, based on FOIA exemption 5, claiming a deliberative process privilege and attorney-client privilege. This document is found in the *Vaughn Index*, number 124. A redacted version of this document was eventually released to Plaintiff subsequent to the administrative appeal of the *Vaughn Index*.

103.  WWP subsequently stated in the related District of Columbia lawsuit that WWP obtained this same document from the BLM. The unredacted memo was attached to WWP's

31

Response in Opposition to the Motion to Transfer Venue as Exhibit Number Six. This same document also appears on FOIA WY Index # 3, number 74. Although FOIA WY Index # 3 states that this document was withheld in its entirety from both WWP and Advocates from the West based on FOIA exemption 5, Ms. Rule declared under oath that this same document was obtained from the BLM. Therefore, either individual employees within the BLM are inappropriately leaking documents containing privileged information relating to Mr. Robbins, and subject to various FOIA exemptions, to third parties, or the BLM has incorrectly represented this document in its FOIA WY Index # 3 as being withheld from WWP and Advocates for the West, as the document has been unquestionably released in its entirety to Ms. Rule.

104.   This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff by personal name and ranch name. The document was subject to a FOIA exemption, and therefore, constitutes protected information under the Privacy Act. The document was "disclosed" to third parties without the prior authorization of the Plaintiff.

105.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

106.    As a result of the Defendants' unlawful release of this information, the Plaintiff is forced
        to defend himself in related litigation, and the future enforceability of the "global
        settlement agreement" is in jeopardy.

107.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of
        the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client
        exemption under FOIA, particularly in light of agency regulations demanding
        consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in
        violation of the Privacy Act.  Stated another way, the agency could have no reasonable
        grounds for redacting privileged documents about the Plaintiff to the Plaintiff himself,
        while simultaneously releasing the same privileged document to a third party in its
        entirety in violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious
        and an abuse of discretion under the APA.

### CLAIM FOR RELIEF IV:
### *Barnes Memorandum*

108.    The allegations set forth in paragraphs 1 through 107 above are incorporated by reference
        as if set forth fully below.

109.    On May 30, 2002, the Worland Field Manager, Darrell Barnes, wrote a memorandum to
        the State Director for the Wyoming BLM providing an updated briefing on a fact-finding
        review related to Mr. Robbins which occurred on April 16, 2002.

110.   The memorandum contains several allegations regarding the Plaintiff's use and management of the Federal public lands for livestock grazing, and contains the author's personal opinions on the recommendations provided by the internal BLM review team. The memorandum identifies the Plaintiff by personal name.

111.   This document was originally released to the Plaintiff in substantially redacted form, based on FOIA exemption 5, claiming a deliberative process privilege.  This document is found in the *Vaughn Index*, number 24.

112.   WWP subsequently obtained this same document from the BLM in its entirety, with no redactions.  This document can be found in the Griffith Index, number 3.

113.   This document is a "record" found in a "system of records" within the meaning of the Privacy Act.  The document contains personal information which identifies the Plaintiff. The document was subject to a FOIA exemption, and therefore, constitutes protected information under the Privacy Act.  The record was "disclosed" to third parties without the prior authorization of the Plaintiff.

114.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information.  Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

115. As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

116. The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff. Releasing a document subject to a deliberative process exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act. Stated another way, the agency could have no reasonable grounds for redacting privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act. Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM FOR RELIEF V:
*Kunz Permit Transfer Memorandum*

117. The allegations set forth in paragraphs 1 through 116 above are incorporated by reference as if set forth fully below.

118. On February 10, 2003, John Kunz, BLM counsel with the Solicitor's Office, faxed a memorandum to Darrell Barnes, former Worland Field Manager, regarding the potential transfer of the Owl Creek grazing permit to Mr. Robbins.

119.   The memorandum contains Mr. Kunz's opinions, legal advice, and recommendations regarding the potential permit transfer. The memorandum identifies the Plaintiff by personal name and allotment name.

120.   This document was withheld from the Plaintiff in its entirety, based on FOIA exemption five, claiming a deliberative process privilege and an attorney-client privilege. This document is found in the *Vaughn Index*, number 119.

121.   WWP subsequently obtained this same document from the BLM with partial redactions. The document is found on FOIA WY Index # 3, number 66.

122.   This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff. The document was subject to a FOIA exemption, and therefore, constitutes protected information under the Privacy Act. The record was "disclosed" to third parties without the prior authorization of the Plaintiff.

123.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

124.   As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

125.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act.  Stated another way, the agency could have no reasonable grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM FOR RELIEF VI:
### *Kunz Permit Transfer Memorandum II*

126.    The allegations set forth in paragraphs 1 through 125 above are incorporated by reference as if set forth fully below.

127.    On January 22, 2003, John Kunz, BLM counsel with the Solicitor's Office, sent a facsimile to Dave Wallace, Range Management Specialist with the Worland Field Office, regarding the potential transfer of the Owl Creek grazing permit to Mr. Robbins.

128.    The facsimile contains the legal advice and recommendations to BLM employees regarding the potential transfer of the Owl Creek grazing permit to Mr. Robbins.  The facsimile identifies the Plaintiff by personal name and allotment name.

129.  This document was withheld from the Plaintiff in its entirety, based on FOIA exemption five, claiming a deliberative process privilege and an attorney-client privilege. This document is found in the *Vaughn Index*, number 50.

130.  WWP subsequently obtained this same document from the BLM. The facsimile was released to WWP in redacted form. This document is found on FOIA WY Index # 3, document 71.

131.  This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff. The document was subject to a FOIA exemption, and therefore, constitutes protected information under the Privacy Act. The record was "disclosed" to third parties without the prior authorization of the Plaintiff.

132.  Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

133.  As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

134.  The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff. Releasing a document subject to a deliberative process and attorney-client

exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act. Stated another way, the agency could have no reasonable grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act. Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

## CLAIM FOR RELIEF VII:
### *Wallace Email II*

135.    The allegations set forth in paragraphs 1 through 134 above are incorporated by reference as if set forth fully below.

136.    On April 15, 2003, Dave Wallace, Range Management Specialist with the Worland Field Office, sent an email to Alan Kesterke, Associate State Director for the Wyoming BLM Office, regarding the BLM's protocol for communications with the Solicitor's Office.

137.    This email contains Mr. Wallace's personal opinions and concerns regarding the recommendations and legal advice provided by the Solicitor's Office. The email identifies the Plaintiff by personal name.

138.    This document was withheld from the Plaintiff in its entirety, based on FOIA exemption five, claiming a deliberative process privilege and an attorney-client privilege. This document is found in the *Vaughn Index*, number 58.

139. WWP subsequently obtained this same document from the BLM. The email was released to WWP in its entirety. The document is found in FOIA Griffith Index, number 11.

140. This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff. The document was subject to a FOIA exemption, and therefore, constitutes protected information under the Privacy Act. The record was "disclosed" to third parties without the prior authorization of the Plaintiff.

141. Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

142. As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

143. The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff. Releasing a document subject to a deliberative process and attorney-client exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act. Stated another way, the agency could have no reasonable grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself,

while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM FOR RELIEF VIII:
### *Wallace Memorandum*

144.   The allegations set forth in paragraphs 1 through 143 above are incorporated by reference as if set forth fully below.

145.   On April 14, 2003, Dave Wallace, Range Management Specialist with the Worland Field Office, sent a facsimile to Alan Kesterke, Associate State Director for the Wyoming BLM Office.  Attached to the facsimile is a memorandum written by Dave Wallace to John Kunz, BLM counsel with the Solicitor's Office, which is also dated April 14, 2003.  The memorandum contains livestock monitoring information, and identifies the Plaintiff by personal name and allotment name.

146.   The two page memorandum was withheld from Mr. Robbins in its entirety, based on FOIA exemption five, under both a deliberative process privilege and an attorney-client privilege.  This document can be found in the *Vaughn Index*, numbers 57 and 101.

147.   WWP subsequently obtained this same document from the BLM.  The memorandum was released to WWP in its entirety.  The document is found in FOIA Griffith Index, number 11.

148.   This document is a "record" found in a "system of records" within the meaning of the

Privacy Act.  The document contains personal information which identifies the Plaintiff.

Where a record is subject to the Privacy Act requirements, and is otherwise exempt from

mandatory disclosure under the applicable FOIA exceptions, releasing such record

without the express prior authorization of the record subject constitutes a violation of the

Privacy Act.

149.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the

Defendants' unlawful release of information.  Furthermore, this information has been

used by third parties in related litigation seeking to invalidate the Plaintiff's "global

settlement agreement" with the Defendants.

150.   As a result of the Defendants' unlawful release of this information, the Plaintiff is forced

to defend himself in related litigation, and the future enforceability of the "global

settlement agreement" is in jeopardy.

151.   The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of

the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client

exemption under FOIA, particularly in light of agency regulations demanding

consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in

violation of the Privacy Act.  Stated another way, the agency could have no reasonable

grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself,

while simultaneously releasing the same privileged document to a third party in its

42

entirety in violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious

and an abuse of discretion under the APA.

### CLAIM FOR RELIEF IX:
### *Kesterke Email*

152. The allegations set forth in paragraphs 1 through 151 above are incorporated by reference

as if set forth fully below.

153. On September 29, 2003, Alan Kesterke, Associate Director for the Wyoming BLM, sent

an email to Brendan Cain, Range Management Specialist for the Worland BLM Office.

The email identifies the Plaintiff by personal name.

154. The email contains the personal opinions and concerns of the author regarding the

implementation of the settlement agreement and the proper chain of agency command in

addressing these issues.

155. The document is listed on WY Index # 2, number 3.  This index states that the document

is subject to the deliberative process privilege, otherwise exempt from disclosure under

FOIA Exemption number five.  This document was nevertheless released to WWP in its

entirety, despite the fact that the document contained privileged information.

156. This document is a "record" found in a "system of records" within the meaning of the

Privacy Act.  The document contains personal information which identifies the Plaintiff.

Where a record is subject to the Privacy Act requirements, and is otherwise exempt from

mandatory disclosure under the applicable FOIA exceptions, releasing such record

without the express prior authorization of the record subject constitutes a violation of the Privacy Act. Neither Plaintiff nor Plaintiff's counsel ever authorized the BLM to release these privileged documents to third parties.

157.    Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

158.    As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

159.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff. Releasing a document subject to a deliberative process exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act. Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM FOR RELIEF X:
### *PEER Letter*

160.    The allegations set forth in paragraphs 1 through 159 above are incorporated by reference as if set forth fully below.

161.   On August 28, 2003, Jeff Ruch, a member of PEER, sent a letter to Earl Devaney, Inspector General for the DOI, requesting an official investigation regarding the propriety of the "global settlement agreement." The letter identifies the Plaintiff by personal name and ranch name.

162.   The letter contains allegations of impropriety regarding the negotiations surrounding the global settlement agreement.

163.   The document is listed in WY Index # 2, number 10. This index states that the document is subject to FOIA Exemption number 7(A), otherwise exempt from disclosure under the FOIA due to the potential for future law enforcement actions against Mr. Robbins. This document was nevertheless released to WWP in its entirety.

164.   This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff. Where a record is subject to the Privacy Act requirements, is otherwise exempt from mandatory disclosure under the applicable FOIA exceptions, and releasing such record without the express prior authorization of the record subject constitutes a violation of the Privacy Act. Neither Plaintiff nor Plaintiff's counsel ever authorized the BLM to release these privileged documents to third parties.

165.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been

used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

166.    As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

167.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff.  Releasing a document subject to a law enforcement exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act. Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

## CLAIM FOR RELIEF XI:
### *Humane Society Letter*

168.    The allegations set forth in paragraphs 1 through 167 above are incorporated by reference as if set forth fully below.

169.    On March 19, 2003, Darrell Barnes, former Worland Field Office Manager, sent a letter to the Humane Society, in response to an allegation made by the Humane Society that Mr. Robbins' livestock were in poor health conditions.  The letter identifies the Plaintiff by personal name and ranch name.

170. The document is listed on WY Index # 3, number 38. This index states that the document is subject to the deliberative process privilege, otherwise exempt from disclosure under FOIA Exemption number five. This document was nevertheless released to WWP in its entirety, despite the fact that the document contained privileged information.

171. This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff. Where a record is subject to the Privacy Act requirements, and is otherwise exempt from mandatory disclosure under the applicable FOIA exceptions, releasing such record without the express prior authorization of the record subject constitutes a violation of the Privacy Act. Neither the Plaintiff nor Plaintiff's counsel ever authorized the BLM to release these privileged documents to third parties.

172. Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

173. As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

174. The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff. Releasing a document subject to the deliberative process exemption under

FOIA, particularly in light of agency regulations demanding consideration of the Privacy

Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act.

Defendants' actions are also arbitrary, capricious and an abuse of discretion under the

APA.

### CLAIM FOR RELIEF XII:
#### *Budd–Falen Letter I*

175.    The allegations set forth in paragraphs 1 through 174 above are incorporated by reference

as if set forth fully below.

176.    On February 12, 2003, Ms. Karen Budd-Falen, counsel for Mr. Robbins, faxed a letter to

the following individuals: Fran Cherry, Deputy Director of the BLM; John Kunz, attorney

for the Solicitor's Office; Robert Comer, attorney for the Solicitor's Office; and the

Worland BLM Field Office.

177.    This facsimile contains confidential information which is protected by the Privacy Act.

The facsimile's cover sheet contained the following explicit warning: "The information

contained in this facsimile is protected by the attorney/client privilege and is confidential

information intended only for the use of the individual or entity named above.  If the

reader of this message is not the intended recipient, you are hereby notified that any

unauthorized dissemination, distribution or copy of this communication is strictly

prohibited."  This document is therefore exempt from mandatory disclosure under FOIA,

since the release of which would constitute a clearly unwarranted invasion of personal
privacy.

178.    This document was prepared as part of the "global settlement agreement" between the
        BLM and Plaintiff described in paragraph 14 above.

179.    Despite the prominent warning placed on the facsimile transmittal sheet that the
        information was intended to be confidential, this same document was subsequently
        released in its entirety to Ms. Rule.  This document is attached to Ms. Rule's Declaration
        as Exhibit Fifteen, submitted as part of WWP's Response in Opposition to Defendant-
        Intervenor's Motion to Transfer Venue in WWP v. Clarke, No. 1:03CV01985 (D.D.C.).

180.    This information was improperly released to the environmental organizations on two
        separate grounds.  First, the BLM released these records marked "confidential" without
        obtaining authorization from either Mr. Robbins or Ms. Budd-Falen prior to its release.
        Second, the document was improperly released to Ms. Rule in its entirety, and should
        have been partially redacted under Exemptions 5 and 6.  Evidence that this document was
        improperly released in its entirety is shown by the BLM's subsequent release of a
        redacted version of this same document to Ms. Rule.  This redacted version can be found
        in the *Vaughn Index* created November 4, 2004, document number 36.

181.    This document is a "record" found in a "system of records" within the meaning of the
        Privacy Act.  The document contains personal information which identifies the Plaintiff.
        Where a record is subject to the Privacy Act requirements, and is otherwise exempt from

mandatory disclosure under the applicable FOIA exceptions, releasing such record without the express prior authorization of the record subject constitutes a violation of the Privacy Act.

182.   This document was released to Ms. Rule in its entirety.  However, the document was released without first obtaining the authorization of either Ms. Budd-Falen or Mr. Robbins.  Accordingly, the record was "disclosed" to third parties without the prior authorization of the Plaintiff.

183.   Furthermore, this document should have only been released to Ms. Rule in redacted form, as demonstrated by the BLM's own subsequent actions in releasing a redacted version of this same document in the November 4, 2004 *Vaughn Index*.  Releasing an unredacted version of a document, in light of the BLM's subsequent actions redacting the document prior to the release, demonstrates that the BLM was aware that the information should have been exempt under the applicable FOIA statute.

184.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information.  Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

185.   As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

186.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of

the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client

exemption under FOIA, particularly in light of agency regulations demanding

consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in

violation of the Privacy Act.  Stated another way, the agency could have no reasonable

grounds for redacting privileged documents about the Plaintiff, while simultaneously

releasing the same privileged document to a third party in its entirety in violation of the

Privacy Act.  Defendants' actions are also arbitrary, capricious and an abuse of discretion

under the APA.

### CLAIM FOR RELIEF XIII:
### *Budd–Falen Letter II*

187.    The allegations set forth in paragraphs 1 through 186 above are incorporated by reference

as if set forth fully below.

188.    On February 17, 2003, Ms. Karen Budd-Falen, counsel for Mr. Robbins, faxed a letter to

the following individuals: Fran Cherry, Deputy Director of the BLM; John Kunz, attorney

for the Solicitor's Office; Robert Comer, attorney for the Solicitor's Office; and the

Worland BLM Field Office.

189.    This facsimile contains confidential information which is protected by the Privacy Act.

The facsimile's cover sheet contained the following explicit warning: "The information

contained in this facsimile is protected by the attorney/client privilege and is confidential

51

information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited." This document is therefore exempt from mandatory disclosure under FOIA, since the release of which would constitute a clearly unwarranted invasion of personal privacy.

190. This document was prepared and submitted as part of the "global settlement agreement" discussions described in paragraph 14 above.

191. Despite the prominent warning placed on the facsimile transmittal sheet that the information was intended to be confidential, this same document was subsequently released in its entirety to Ms. Rule.  This document is attached to Ms. Rule's Declaration as Exhibit Sixteen, submitted as part of WWP's Response in Opposition to Defendant-Intervenor's Motion to Transfer Venue in WWP v. Clarke, No. 1:03CV01985 (D.D.C.).

192. This information was improperly released to the environmental organizations on two separate grounds.  First, the BLM released these records marked "confidential" without obtaining authorization from either Mr. Robbins or Ms. Budd-Falen prior to its release. Second, the document was improperly released to Ms. Rule in its entirety, and should have been partially redacted under Exemptions 5 and 6.

193. This document is a "record" found in a "system of records" within the meaning of the Privacy Act.  The document contains personal information which identifies the Plaintiff.

Where a record is subject to the Privacy Act requirements, is otherwise exempt from mandatory disclosure under the applicable FOIA exceptions, and releasing such record without the express prior authorization of the record subject constitutes a violation of the Privacy Act.

194. This document was released to Ms. Rule in its entirety. However, the document was released without first obtaining the authorization of either Ms. Budd-Falen or Mr. Robbins. Accordingly, the record was "disclosed" to third parties without the prior authorization of the Plaintiff.

195. Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

196. As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

197. The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff. Releasing a document subject to a deliberative process and attorney-client exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in

violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM FOR RELIEF XIV:
*Budd–Falen Letter III*

198.    The allegations set forth in paragraphs 1 through 197 above are incorporated by reference as if set forth fully below.

199.    On March 7, 2003, Ms. Karen Budd-Falen, counsel for Mr. Robbins, faxed a letter to the following individuals: Fran Cherry, Deputy Director of the BLM; the Worland BLM Field Office, and the Wyoming State BLM office.

200.    This facsimile contains confidential information which is protected by the Privacy Act. The facsimile's cover sheet contained the following explicit warning: "The information contained in this facsimile is protected by the attorney/client privilege and is confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited."  This document is therefore exempt from mandatory disclosure under FOIA, since the release of which would constitute a clearly unwarranted invasion of personal privacy.

201.    This document was prepared and submitted as part of the "global settlement agreement" discussions described in paragraph 14 above.

202. Despite the prominent warning placed on the facsimile transmittal sheet that the information was intended to be confidential, this same document was subsequently released in its entirety to Ms. Rule.  This document is attached to Ms. Rule's Declaration as Exhibit Seventeen, submitted as part of WWP's Response in Opposition to Defendant-Intervenor's Motion to Transfer Venue in WWP v. Clarke, No. 1:03CV01985 (D.D.C.).

203. This information was improperly released to the environmental organizations on two separate grounds.  First, the BLM released these records marked "confidential" without obtaining authorization from either Mr. Robbins or Ms. Budd-Falen prior to its release. Second, the document was improperly released to Ms. Rule in its entirety, and should have been partially redacted under Exemptions 5 and 6.

204. This document is a "record" found in a "system of records" within the meaning of the Privacy Act.  The document contains personal information which identifies the Plaintiff. Where a record is subject to the Privacy Act requirements, and is otherwise exempt from mandatory disclosure under the applicable FOIA exceptions, releasing such record without the express prior authorization of the record subject constitutes a violation of the Privacy Act.

205. This document was released to Ms. Rule in its entirety.  However, the document was released without first obtaining the authorization of either Ms. Budd-Falen or Mr. Robbins.   Accordingly, the record was "disclosed" to third parties without the prior authorization of the Plaintiff.

206.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the
       Defendants' unlawful release of information.  Furthermore, this information has been
       used by third parties in related litigation seeking to invalidate the Plaintiff's "global
       settlement agreement" with the Defendants.

207.   As a result of the Defendants' unlawful release of this information, the Plaintiff is forced
       to defend himself in related litigation, and the future enforceability of the "global
       settlement agreement" is in jeopardy.

208.   The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of
       the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client
       exemption under FOIA, particularly in light of agency regulations demanding
       consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in
       violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an
       abuse of discretion under the APA.

### CLAIM FOR RELIEF XV:
### *Budd–Falen Letter IV*

209.   The allegations set forth in paragraphs 1 through 208 above are incorporated by reference
       as if set forth fully below.

210.   On January 15, 2003, Ms. Karen Budd-Falen, counsel for Mr. Robbins, faxed a letter to
       the following individuals: Fran Cherry, Deputy Director of the BLM; John Kunz, attorney

for the Solicitor's Office; Jennifer Riggs, attorney for the Solicitor's Office; Robert

Comer, attorney for the Solicitor's Office; and the Worland BLM Field Office.

211.    This facsimile contains confidential information which is protected by the Privacy Act.

The facsimile's cover sheet contained the following explicit warning: "The information

contained in this facsimile is protected by the attorney/client privilege and is confidential

information intended only for the use of the individual or entity named above. If the

reader of this message is not the intended recipient, you are hereby notified that any

unauthorized dissemination, distribution or copy of this communication is strictly

prohibited." This document is therefore exempt from mandatory disclosure under FOIA,

since the release of which would constitute a clearly unwarranted invasion of personal

privacy.

212.    This document was prepared and submitted as part of the "global settlement agreement"

discussions described in paragraph 14 above.

213.    Despite the prominent warning placed on the facsimile transmittal sheet that the

information was intended to be confidential, this same document was subsequently

released in its entirety to Ms. Rule. This document is attached to Ms. Rule's Declaration

as Exhibit Thirteen, submitted as part of WWP's Response in Opposition to Defendant-

Intervenor's Motion to Transfer Venue in WWP v. Clarke, No. 1:03CV01985 (D.D.C.).

214.    This information was improperly released to the environmental organizations on two

separate grounds. First, the BLM released these records marked "confidential" without

57

obtaining authorization from either Mr. Robbins or Ms. Budd-Falen prior to its release. Second, the document was improperly released to Ms. Rule in its entirety, and should have been partially redacted under Exemptions 5 and 6.

215.    This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff. Where a record is subject to the Privacy Act requirements, and is otherwise exempt from mandatory disclosure under the applicable FOIA exceptions, releasing such record without the express prior authorization of the record subject constitutes a violation of the Privacy Act.

216.    This document was released to Ms. Rule in its entirety. However, the document was released without first obtaining the authorization of either Ms. Budd-Falen or Mr. Robbins. Accordingly, the record was "disclosed" to third parties without the prior authorization of the Plaintiff.

217.    Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

218.    As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

219.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM FOR RELIEF XVI:
#### *Budd–Falen Memo*

220.    The allegations set forth in paragraphs 1 through 219 above are incorporated by reference as if set forth fully below.

221.    On August 26, 2002, an attorney employed by Budd–Falen Law Offices, drafted an intra-office litigation strategy memorandum.  This memorandum was distributed to Karen Budd-Falen, counsel for Mr. Robbins.   This document is listed on FOIA Washington Index, number 62.

222.    The memorandum contains the confidential legal advice and opinions of Mr. Robbins' counsel, and contains information subject to the attorney work product privilege, and the attorney-client privilege.  The memorandum also contains the express statement that the information contained in the memorandum is considered "confidential."  This document

is therefore exempt from mandatory disclosure under the FOIA, since the release of which would constitute a clearly unwarranted invasion of personal privacy.

223.  This memorandum was sent via facsimile from Karen Budd–Falen to Robert Comer, counsel for the BLM in the Solicitor's Office.  The intended recipient included only Robert Comer.  Nothing contained in the memorandum authorizes dissemination to other BLM employees or otherwise negates the confidential nature of the document.  Outside environmental groups were not the intended recipients of any of these documents provided by Ms. Budd-Falen to the BLM.

224.  This information was improperly released to the environmental organizations on two separate grounds.  First, the BLM released these records marked "confidential" without obtaining authorization from either Mr. Robbins or Ms. Budd-Falen prior to its release.  Second, the document was improperly released to Ms. Rule in its entirety, and should have been partially redacted under Exemptions 5 and 6.

225.  This document is a "record" found in a "system of records" within the meaning of the Privacy Act.  The document contains personal information which identifies the Plaintiff.  Where a record is subject to the Privacy Act requirements, and is otherwise exempt from mandatory disclosure under the applicable FOIA exceptions, releasing such record without the express prior authorization of the record subject constitutes a violation of the Privacy Act.

226.    This document was released to Ms. Rule in its entirety.  However, the document was
        released without first obtaining the authorization of either Ms. Budd-Falen or Mr.
        Robbins.   Accordingly, the record was "disclosed" to third parties without the prior
        authorization of the Plaintiff.

227.    Plaintiff suffered an unwarranted invasion of personal privacy as a result of the
        Defendants' unlawful release of information.  Furthermore, this information has been
        used by third parties in related litigation seeking to invalidate the Plaintiff's "global
        settlement agreement" with the Defendants.

228.    As a result of the Defendants' unlawful release of this information, the Plaintiff is forced
        to defend himself in related litigation, and the future enforceability of the "global
        settlement agreement" is in jeopardy.

229.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of
        the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client
        exemption under FOIA, particularly in light of agency regulations demanding
        consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in
        violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an
        abuse of discretion under the APA.

**CLAIM FOR RELIEF XVII**:
*Casper Star Tribune Article, Aug. 3, 2003 Memo*

230.  The allegations set forth in paragraphs 1 through 229 above are incorporated by reference as if set forth fully below.

231.  Plaintiff submitted a FOIA request to the Worland Field Office on July 1, 2003, asking for all documents relating to a June 22, 2003 news article written about the Plaintiff in the Casper Star Tribune. In response, the Defendant provided a single document which was a chronological listing of events which contained substantial redactions citing several FOIA exemptions in support thereof. The redactions were based on the following FOIA exemptions: Exemption 5 under the deliberative process privilege; Exemption 6 as an unwarranted invasion of third parties' personal privacy; Exemption 7(a) based on possible interference with current or prospective enforcement proceedings; Exemption 7©) based on an unwarranted invasion of personal privacy; and Exemption 7(d) based on the disclosure of a confidential source.

232.  The Casper Star Tribune subsequently provided the Plaintiff with an unredacted copy of the same information in somewhat different format from the redacted document provided to the Plaintiff. This document from the Casper Star Tribune was dated August 4, 2003. This document and four other documents were apparently provided to PEER, and apparently were provided to PEER, or another intermediary, from the BLM. Apparently, this August 4, 2003 document was released in its entirety to PEER.

233.  This August 4, 2003 document contains several allegations of improper use and management of the Federal public lands for livestock grazing uses by the Plaintiff. The document identifies the Plaintiff by personal name and allotment name.

234.  The resulting newspaper article, based on the unlawfully released information, is attached to Ms. Rule's Declaration as Exhibit Eighteen, submitted as part of WWP's Response in Opposition to Defendant-Intervenor's Motion to Transfer Venue in WWP v. Clarke, No. 1:03CV01985 (D.D.C.).

235.  This document is a "record" found in a "system of records" within the meaning of the Privacy Act. The document contains personal information which identifies the Plaintiff. The document was subject to a FOIA exemption, and therefore, constitutes protected information under the Privacy Act. The record was "disclosed" to third parties without the prior authorization of the Plaintiff.

236.  Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information. Furthermore, this information has been used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants.

237.  As a result of the Defendants' unlawful release of this information, the Plaintiff is forced to defend himself in related litigation, and the future enforceability of the "global settlement agreement" is in jeopardy.

238.   The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff.  Releasing a document subject to a deliberative process exemption under FOIA, and also subject to a law enforcement exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act.  Stated another way, the agency could have no reasonable grounds for redacting privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM FOR RELIEF XVIII
### *Wallace Memorandum, Second Claim*

239.   The allegations set forth in paragraphs 1 through 238 above are incorporated by reference as if set forth fully below.

240.   On April 14, 2003, Dave Wallace, Range Management Specialist with the Worland Field Office, sent a facsimile to Alan Kesterke, Associate State Director for the Wyoming BLM Office.  Attached to the facsimile is a memorandum written by Dave Wallace to John Kunz, BLM counsel with the Solicitor's Office, which is also dated April 14, 2003.  The memorandum contains livestock monitoring information, and identifies the Plaintiff by personal name and allotment name.

241.    The two page memorandum was withheld from Mr. Robbins in its entirety, based on
        FOIA exemption five, under both a deliberative process privilege and an attorney-client
        privilege. This document can be found in the *Vaughn Index*, numbers 57 and 101.

242.    PEER subsequently obtained this same BLM document, apparently from the BLM. The
        document was attached to a letter dated August 28 2003 from PEER to Mr. Earl Devaney,
        Office of the Inspector General. PEER has refused to allow Plaintiff's counsel to talk
        with the author of the letter, and has stated that it will object to his deposition being taken
        by Plaintiff's counsel. Plaintiff's counsel assumes that it will be necessary to depose the
        PEER employee who authored the August 28, 2003 letter and who attached the BLM
        documents to his letter to determine finally where he obtained the documents. At a
        minimum, it is clear that the BLM improperly disclosed this document to some person
        and that person's identity is being investigated.

243.    This document is a "record" found in a "system of records" within the meaning of the
        Privacy Act. The document contains personal information which identifies the Plaintiff.
        Where a record is subject to the Privacy Act requirements, and is otherwise exempt from
        mandatory disclosure under the applicable FOIA exceptions, releasing such record
        without the express prior authorization of the record subject constitutes a violation of the
        Privacy Act.

244.    Plaintiff suffered an unwarranted invasion of personal privacy as a result of the
        Defendants' unlawful release of information. Furthermore, this information has been

used by third parties in related litigation seeking to invalidate the Plaintiff's "global settlement agreement" with the Defendants, and contents of the memo have been disclosed in a newspaper article derogatory to Mr. Robbins,  to the Plaintiff's economic and personal loss.

245.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act.  Stated another way, the agency could have no reasonable grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

**CLAIM FOR RELIEF XIX**
***Tom Roberts' Letter***

246.    The allegations set forth in paragraphs 1 through 245 above are incorporated by reference as if set forth fully below.

247.    On August 28, 2002, Assistant United States Attorney Tom Roberts sent a letter to John Kunz, Assistant Regional Solicitor with the BLM, about the Plaintiff, a proposed

settlement agreement between Plaintiff and the BLM, and the pending RICO case against BLM employees where Mr. Roberts was defending those employees.

248.   PEER subsequently obtained this same BLM document, apparently from the BLM.  The document was attached to a letter dated August 28, 2003, from PEER to Mr. Earl Devaney, Office of the Inspector General.  PEER has been asked to confirm the source of this document, but has not done so, to date.  Plaintiff's counsel assumes that it will be necessary to depose the PEER employee who authored the August 28, 2003 letter and who attached the BLM document to his letter to determine where he obtained the document.  At a minimum, it is clear that the BLM improperly disclosed this document to some person and that person's identity is being investigated.

249.   This document is a "record" found in a "system of records" within the meaning of the Privacy Act.  The document contains personal information which identifies the Plaintiff. Where a record is subject to the Privacy Act requirements, and is otherwise exempt from mandatory disclosure under the applicable FOIA exceptions, releasing such record without the express prior authorization of the record subject constitutes a violation of the Privacy Act.

250.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the Defendants' unlawful release of information.  Furthermore, contents of the letter from Mr. Roberts was published in at least one newspaper in Wyoming in a derogatory article about Mr. Robbins,  to the Plaintiff's economic and personal detriment and loss.

251.   The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of the Plaintiff.  Releasing a document subject to a deliberative process and attorney-client exemption under FOIA, particularly in light of agency regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act.  Stated another way, the agency could have no reasonable grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act.  Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

## CLAIM XX
### *Billing History*

252.   The allegations set forth in paragraphs 1 through 251 above are incorporated by reference as if set forth fully below.

253.   On March 24, 2003, Worland Field Office, Wyoming BLM employee Dave Wallace authored a document entitled "Billing History" which he sent to BLM employee Alan Kesterke. This document contains information about the Plaintiff which should not have been disclosed, and, in fact, the Plaintiff was denied this document by the BLM.

254.   PEER subsequently obtained this same BLM document, apparently from the BLM.  The document was attached to a letter dated August 28 2003 sent from PEER to Mr. Earl Devaney, Office of the Inspector General.  PEER has been asked to confirm the source of

this document, but has not done so, to date. Plaintiff's counsel assumes that it will be

necessary to depose the PEER employee who authored the August 28, 2003 letter and

who attached the BLM document to his letter to determine finally where he obtained the

document. At a minimum, it is clear that the BLM improperly disclosed this document to

some person and that person's identity is being investigated.

255.    This document is a "record" found in a "system of records" within the meaning of the

Privacy Act. The document contains personal information which identifies the Plaintiff.

Where a record is subject to the Privacy Act requirements, and is otherwise exempt from

mandatory disclosure under the applicable FOIA exceptions, releasing such record

without the express prior authorization of the record subject constitutes a violation of the

Privacy Act.

256.    Plaintiff suffered an unwarranted invasion of personal privacy as a result of the

Defendants' unlawful release of information. Furthermore, contents of the billing history

were published in at least one newspaper article written about the Plaintiff which was

published in the only state wide circulation newspaper in the state of Wyoming, to the

Plaintiff's economic and personal detriment and loss.

257.    The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of

the Plaintiff. Releasing of this document by the BLM, particularly in light of agency

regulations demanding consideration of the Privacy Act, constitutes an "intentional and

willful" act, and is in violation of the Privacy Act. Stated another way, the agency could

have no reasonable grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act. Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### CLAIM XXI
### *March 7, 2002 Memo from Darrell Barnes to State Director*

258.    The allegations set forth in paragraphs 1 through 257 above are incorporated by reference as if set forth fully below.

259.    On March 7, 2002, Darrell Barnes, Field Manager with the Worland, Wyoming BLM, sent a memo to the Wyoming State Director of the BLM concerning the Plaintiff, and a review team that had been reviewing the Plaintiff's BLM grazing allotments. This document contains information about the Plaintiff which should not have been disclosed, and, in fact, the BLM refused to produce the document to a lawyer with an environmental activist group in Idaho.

260.    A reporter with the Billings, Montana Gazette newspaper, however, obtained this same BLM document, apparently from the BLM. The document was attached to a FAX which Mr. Stark sent to counsel for the Plaintiff on September 8, 2003, after Plaintiff's counsel asked Mr. Stark about documents referenced in newspaper articles he had written about the Plaintiff. Counsel for Plaintiff has attempted to confirm that Mr. Stark obtained those

documents from the BLM, but Mr. Stark has refused to answer that question, and states

that he will so refuse even if he is deposed and asked the source of that document.

261.   This same document was quoted in an article from *High Country News* magazine.  The

article was dated September 29, 2003, and was authored by the same writer who authored

derogatory articles about Mr. Robbins in the Casper, Wyoming *Star Tribune* newspaper.

262.   At a minimum, it is clear that the BLM improperly disclosed this document to some

person or persons  and that person's or persons'  identity or identities are being

investigated.

263.   This document is a "record" found in a "system of records" within the meaning of the

Privacy Act.  The document contains personal information which identifies the Plaintiff.

Where a record is subject to the Privacy Act requirements, and is otherwise exempt from

mandatory disclosure under the applicable FOIA exceptions, releasing such record

without the express prior authorization of the record subject constitutes a violation of the

Privacy Act.

264.   Plaintiff suffered an unwarranted invasion of personal privacy as a result of the

Defendants' unlawful release of information.  Furthermore, the document was used as the

basis for negative newspaper articles written about Mr. Robbins to his economic and

personal detriment and loss.

265.   The Defendants' actions clearly demonstrate a flagrant disregard for the privacy rights of

the Plaintiff.  Releasing of this document by the BLM, particularly in light of agency

regulations demanding consideration of the Privacy Act, constitutes an "intentional and willful" act, and is in violation of the Privacy Act. Stated another way, the agency could have no reasonable grounds for withholding privileged documents about the Plaintiff to the Plaintiff himself, while simultaneously releasing the same privileged document to a third party in its entirety in violation of the Privacy Act. Defendants' actions are also arbitrary, capricious and an abuse of discretion under the APA.

### Request for Relief

WHEREFORE, on the foregoing basis, the Plaintiff respectfully requests that the Court grant the following relief:

A.   A declaratory judgment that the release of agency records by the United States Department of the Interior, Bureau of Land Management, to a third party, which they were not required to release without the consent of the Plaintiff, is a violation of the Privacy Act;

B.   A court order enjoining the United States Department of the Interior, Bureau of Land Management, from further releasing any records contained within a system of records which identify the Plaintiff and which are protected under the Privacy Act;

C..   Award the Plaintiff actual damages as provided by 5 U.S.C. § 552a(g)(4)(A), the exact amount of which will be determined at trial;

D.   Award the Plaintiff his reasonable costs, litigation expenses, and attorney's fees associated with this litigation pursuant to 5 U.S.C. § 552a(g)(4)(B); and

72

E.    Grant such further and other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 30th day of August, 2005.

Karen Budd-Falen
Brandon L. Jensen
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, WY 82003-0346
307/632-5105 Telephone
307/637-3891 Telefax

Thomas R. French
THOMAS R. FRENCH, P/C.
125 S. Howes St., Suite 401
Fort Collins, CO 80521
(970) 484-0360

73

## CERTIFICATE OF SERVICE

I, the undersigned, certify that a true and correct copy of the foregoing document was transmitted via U.S. Mail, on this 30th day of August, 2005.

Mr. William Pharo
Assistant U.S. Attorney
Office of the United States Attorney
1225 17th Street, Suite 700
Denver, CO 80202